**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**ROBIN COWHERD,**
                      **Plaintiff**

**v.**                                                      **Civil Action No.**
                                                           **3:04CV212-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                      **Defendant**

**MEMORANDUM OPINION**

      This case presents plaintiff Robin Cowherd's challenge to the decision of the Commissioner denying her claim to Disability Insurance Benefits and Supplemental Security Income payments. After considering the record as a whole, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

      The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

      1. The claimant must not be engaged in substantial gainful activity.

      2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

      3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the

Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

 4. The claimant must be unable to do his or her past relevant work.

 5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

 After a hearing, the Administrative Law Judge ("ALJ") found that Ms. Cowherd's diabetes and hypertension were severe impairments, but that they did not prevent her from performing her past relevant work as a driver and a housekeeper. The ALJ found that Ms. Cowherd was able to perform the full range of unskilled light work.

 If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

 Plaintiff contends that the ALJ's decision that her mental impairment and her carpal tunnel syndrome were not "severe" impairments was unsupported by substantial evidence. The significance of finding an impairment "severe" or "non-severe" is whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis. If any

2

impairment is found severe, the analysis is taken to the next step, such that the mere failure to classify a second impairment severe is irrelevant, so long as the actual impact of that impairment is considered as part of the whole. To the extent plaintiff argues that a finding that a particular impairment is not severe can in itself constitute reversible error, she is incorrect. In <u>Maziarz v. Secretary of Health & Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987), the Court established that there is no error in finding a particular impairment non-severe so long as the effect of that condition is considered in determining whether the claimant "retained sufficient residual functional capacity to allow him to perform substantial gainful activity."

The record reflects that the effect of Ms. Cowherd's mental impairment was considered in determining her residual functional capacity. The ALJ stated, "[B]ased on the assessment of Dr. Noonan, as; evaluated under the B criteria of the mental impairment listings, the claimant's mental impairments produce only slight restriction of activities of daily living and difficulties in maintaining social functioning. She has only slight difficulties in maintaining concentration, persistence or pace for unskilled work." Tr. 20-21.

Dr. Noonan examined Ms. Cowherd on May 16, 2003. He recorded that she did not arrive prepared to participate in the examination because she reported that she had taken medication just before leaving home and she was drowsy. Her effort was fair. Tr. 306-307. Dr. Noonan opined that her "scores underestimate her ability level," and he noted that her MMPI II was "not valid." Tr. 308, 310. He opined, "I believe that she is capable of sustaining attention in the performance of simple, repetitive tasks, assuming reasonable motivation to do so." Tr. 310. The testifying vocational expert would eliminate only one category of the jobs he had identified if plaintiff had such severe problems that she needed to avoid interaction with the

public or with coworkers. Tr. 378.  This would leave a significant number of jobs.  However, it must also be noted that the records do *not* support such a limitation.  Indeed, Dr. Noonan recorded that Ms. Cowherd denied any difficulties in relationships with others on the job.  Tr. 310.  In short, substantial evidence supports the ALJ's determination that despite plaintiff's mental impairment, she "retained sufficient residual functional capacity to allow him to perform substantial gainful activity."  Maziarz, supra.

In discussing Ms. Cowherd's alleged carpal tunnel syndrome, the ALJ stated,

> Although she has complained often of numbness and tingling in her hands and legs, and her physicians have included the diagnosis of peripheral neuropathy, there is no objective support for; this diagnosis.  Treatment notes do not specify any loss of sensation.

Tr. 22.  The ALJ further noted the lack of treatment and the absence of notation of any functional limitations.

As noted, failure to designate a condition as a "severe impairment" does not, standing alone, constitute reversible error.  Rather, the inquiry is whether the impairment affected the claimant's residual functional capacity for gainful employment.  As the ALJ observed, there is no evidence of any treatment for Ms. Cowherd's carpal tunnel condition; indeed, there is not even a recommendation that she wear a brace.  When reporting her physical problems to Dr. Noonan, she did not mention any carpal tunnel effects, and there is no record that she had any physical difficulty with the tests, many of which involved writing and/or manipulation.

Even if the evidence pointed to such a severe condition that the claimant could not jobs requiring any repetitive use of the hands (fine manipulation), the vocational expert would exclude only ten percent of the jobs in a single category of the three that he identified.  In fact, however,  substantial evidence supports the ALJ's determination that plaintiff's carpal tunnel

syndrome does not have a significant impact on her residual functional capacity.

Finally, plaintiff contends that the ALJ erred in evaluating her pain, in that he failed to take into account her "Pain Disorder associated with both psychological factors and a general medical condition." Tr. 310. She contends that this mental impairment magnifies the pain she otherwise feels as a result of legitimate physical causes, and she suggests that this condition means that her pain (and her credibility) cannot be evaluated by customary means. The Court must disagree with this conclusion. Even accepting a mental impairment that magnifies her perception of pain beyond what would be experienced by most people, the ALJ is nonetheless entitled to consider the objective evidence that throws light on her subjective perception.

Perception of pain differs a great deal from one person to another. While pain may support a claim of disability, the claimant's subjective assertions are not sufficient. 20 C.F.R. Sec. 404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). If there is objective medical evidence of an underlying medical condition, the ALJ is required to determine whether objective medical evidence confirms the severity of the alleged pain. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994), Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991); Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ may consider muscle spasms, atrophy, reflex abnormalities, neurological deficits, loss of sensation, household and social activities as well as the type of medication used to alleviate the pain. 20 C.F.R. 416.929©)(3); Jones, supra, at 1370; Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990).

The ALJ noted that although Ms. Cowherd states that her back and leg pain are her worst

problems, she has had minimal treatment for her back. She takes fairly mild pain medications, and she has not sought any stronger medication. She attends church twice a month (when she can get a ride), and she works part-time at a nursing home. Tr. 349-350, 357. These are activities that may be considered by the ALJ in evaluating plaintiff's complaints of pain. In addition, the ALJ is in a unique position in being able to observe the claimant as she testifies. "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987).

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). The Court finds no error and concludes that substantial evidence supports the ALJ's factual determinations.

An order in conformity has this day entered.